UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLARD L. SLOAN, EUGENE J.
WINNINGHAM, BOB L. BERTRAM,
JAMES L. KELLEY, on behalf of
themselves and a similarly situated class,

    Plaintiffs,                              CASE NO. 06-10861

-vs-                                          PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

BORGWARNER DIVERSIFIED
TRANSMISSION PRODUCTS INC.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER

**BACKGROUND**

Plaintiffs Willard L. Sloan, Eugene J. Winningham, Bob L. Bertram, and James L. Kelley (collectively, "Plaintiffs") are former employees of Defendant BorgWarner Diversified Transmission Products, Inc. ("DTP").

On January 10, 2006, Defendant DTP sent letters to approximately 1,000 retirees and surviving spouses of retirees who retired from its employ on or after October 2, 1989, announcing significant reductions in retiree health care benefits. (Pl.'s Resp. Mot. Stay 2). For retirees and surviving spouses of retirees who retired on or after January 1, 1993, DTP threatened to implement reductions on April 1, 2006. (*Id.*). For retirees and surviving spouses of retirees who retired on or between October 27, 1989 and December 31, 1992, the reductions are scheduled to occur on October 1, 2006.on or between October 1, 2006. (*Id.*).

On January 13, 2006, DTP filed a preemptive declaratory judgment against UAW local 287 and retiree Gerald Poor in the Southern District of Indiana. The defendants in that case filed a Motion to Dismiss the lawsuit, which was denied by Chief Judge Larry J. McKinney on May 12, 2006.

On February 27, 2006, Plaintiffs filed this lawsuit on behalf of themselves and a similarly situated class against DTP to challenge the announced retiree health care benefit reductions.

On March 7, 2006, DTP filed the instant Motion to Transfer this lawsuit to Indiana, and filed a separate Motion to Stay the proceedings pending a ruling on this Motion to Transfer. On March 16, 2006, Plaintiffs filed a Motion for Class Certification. Plaintiffs filed a response to the Motion to Transfer on March 31, 2006, and DTP filed a reply on April 17, 2006.

## ANALYSIS

### A.   Motion to Transfer

Defendant has moved to transfer this case to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a), arguing that (1) the first-to-file rule supports such a transfer, and (2) private and public interest factors weigh in favor of transfer. Plaintiffs dispute the propriety of transfer, arguing that: (1) the first-to-file rule is inapplicable in declaratory judgment actions, and (2) Defendant has failed to carry its burden of proving that the relevant factors strongly favor transfer.

The parties do not dispute that venue is proper in this District. Rather, the parties dispute whether this litigation is more properly pursued in the Southern District of Indiana. The Court will consider each of the arguments in turn.

#### 1.   First-to-File Rule

The first-to-file rule provides that in suits involving virtually identical parties and issues are pending in separate federal courts, "the entire action should be decided by the court in which [the] action was first filed." *Smith v. SEC*, 129 F.3d 356 (6th Cir. 1997). However, "[d]istrict courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc., Inc.*, 16 Fed. Appx. 433, 437 (6th Cir. July 31, 2001) (unpublished); *see also AmSouth Bank v. Dale*, 386 F.3d 763, 784-91 & n.8 (6th Cir. 2004) ("[T]he first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory action.").

The Sixth Circuit in *AmSouth* noted the court's disdain for those who file declaratory action shortly prior to the filing of suit by "natural plaintiffs" for the purpose of acquiring a favorable forum:

> Allowing declaratory actions in these situations can deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit. This also dovetails with the previous factor: where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum -- a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act.

386 F.3d at 788 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) (the Declaratory Judgment Act "is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse.") (internal quotation marks omitted)); *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 523 (6th Cir. 2000) ("[A] rule permitting [this sort of declaratory] action could frustrate a plaintiff's

3

choice of forum and encourage forum shopping, races to the courthouse, needless litigation occasioning waste of judicial resources, delay in the resolution of controversies, and misuse of judicial process to harass an opponent in litigation," irrespective of the declaratory plaintiff's motives). Moreover, declaratory judgment actions filed in response to a notice letter from the "natural plaintiffs" also discourage courts from following the first-to-file rule. *See Int'l Union v. Dana Corp.*, Case No. 99-7603, 1999 WL 33237054, at * 3 (N.D. Ohio Dec. 6, 1999) (unpublished) ("Improper forum shopping typically motivates the first filer's run to the court of its choosing. Such motive is found most readily, and viewed most unenthusiastically, where the first filer acted on the basis of an anticipation that its opponent was about to file a substantive suit against it."); *see also 909 Corp. v. Village of Bolingbrook Police Pension Fund*, 741 F.Supp. 1290, 1292 (S.D. Tex. 1990) ("Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum.").

Here, DTP filed a declaratory judgment action, substantially identical to the instant case, in the Southern District of Indiana three days after announcing by letter its intent to cut retiree benefits, and only one day after learning that the retirees were threatening to sue. In addition, Plaintiffs have noted that Sixth Circuit law is more favorable to their position than Seventh Circuit law on the issue of changing retiree welfare benefits.[1] While DTP notes that it could not

---

[1] As the Third Circuit noted in *UAW v. Skinner Engine Co.*, 188 F.3d 130, 140 (3d. Cir. 1999):

> The Sixth Circuit, therefore, adopted what has become commonly known as the "Yard-Man inference," pursuant to which courts presume that the parties intended retiree welfare benefits to continue for life, notwithstanding the expiration of a collective bargaining agreement. The inference exerts a fair amount of influence

have brought suit in this District because this Court does not have jurisdiction over any retiree or Local 287, this does not support DTP's argument that it is entitled to deference for having filed its declaratory judgment suit in Indiana first.  Accordingly, the Court finds that the first-to-file

> in how these types of cases are resolved. In *Yard-Man* [*Inc.*, 716 F.2d 1476 (6th Cir. 1984)], the presumption was such that the court rejected the company's contention that the general durational clause, which provided for the termination of the collective bargaining agreement on a date certain, precluded any inference that retirement insurance benefits were vested. The court determined that when there is sufficient indicia of lifetime benefits, a general durational clause is insufficient to defeat vesting.

However, this Court notes that in *Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 579-80 (6th Cir. 2006), the Sixth Circuit admonished courts against overstating the significance of the "Yardman inference":

> Both El Paso and CNH America devote a great deal of energy to disputing the correctness of the Yard-Man inference. El Paso even suggests that this panel should overrule Yard-Man. [footnote omitted]  Aside from a panel's lack of authority to do so, these concerns are significantly overstated. El Paso and CNH America misinterpret the term "inference" and confuse it with a legal presumption. Under *Yard-Man* we may infer an intent to vest from the context and already sufficient evidence of such intent. Absent such other evidence, we do not start our analysis presuming anything. If Yard-Man required a presumption, the burden of rebutting that presumption would fall on the defendants. However, under Yard-Man, "there is no legal presumption that benefits vest and that the burden of proof rests on plaintiffs." *Maurer* [*v. Joy Techs., Inc.*, 212 F.3d 907 917 (6th Cir. 2000)].  This Court has never inferred an intent to vest benefits in the absence of either explicit contractual language or extrinsic evidence indicating such an intent. Rather, the inference functions more to provide a contextual understanding about the nature of labor-management negotiations over retirement benefits. That is, because retirement health care benefits are not mandatory or required to be included in an agreement, and because they are "typically understood as a form of delayed compensation or reward for past services" it is unlikely that they would be "left to the contingencies of future negotiations." *Yard-Man*, 716 F.2d at 1481-82 (citations omitted). When other contextual factors so indicate, *Yard-Man* simply provides another inference of intent. All that *Yard-Man* and subsequent cases instruct is that the Court should apply ordinary principles of contract interpretation. There is no need to revise, reconsider, or overrule *Yard-Man*.

rule does not bar Plaintiffs' claims in this Court.

### 2. Transfer under 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In making the decision to transfer, a court should consider private interests such as whether: "(1) the action could have been brought in the proposed transferee-court; (2) a transfer would promote the interests of justice; and (3) a transfer would serve the parties' and the witnesses' convenience." *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001) (citing *United States v. P.J. Dick, Inc.*, 79 F. Supp. 2d 803, 805-06 (E.D. Mich. 2000)). District courts have wide discretion to transfer an action under 28 U.S.C. § 1404(a) in order to "prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Helder v. Hitachi Power Tools, USA Ltd.*, 764 F. Supp. 93, 95-96 (E.D. Mich. 1991) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)).

> Eastern District of Michigan courts have considered the following factors: (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E. D. Mich. 2000) (citation omitted); *Hord v. Recchio*, Case No. 05-73387, 2006 U.S. Dist. LEXIS 14887, at *7 (E. D. Mich. Mar. 31, 2006)

6

(unpublished).

The Court also takes into account public interests, such as "court docket congestion; burden on the community if no connection with the case; local interest in having localized controversies decided at home; and the court's familiarity with governing law." *Penwest Dev. Corp. v. Dow Chemical Co.*, 667 F. Supp. 436, 439 (E.D. Mich. 1987).

The movant bears the burden of demonstrating that "fairness and practicality strongly favor the forum to which transfer is sought." *Id.* (quoting *Rowe v. Chrysler Corp.,* 520 F. Supp. 15, 16 (E.D. Mich. 1981). The movant must make this showing by a preponderance of the evidence. *Id.* (citing *International Union, U.A.W. v. Aluminum Co. of Am.*, 875 F. Supp. 430, 433 (N.D. Ohio 1995)).

### a. Convenience of the Parties

Defendant DTP argues that Plaintiffs' only evident connection with the Eastern District of Michigan is its legal counsel. Two of the four named class representatives reside in Kentucky, a third resides in Tennessee, and the fourth resides in Ludington, Michigan, which is within the Western, not Eastern, District of Michigan. Defendant argues that Indianapolis is more convenient for the Kentucky and Tennessee plaintiffs in terms of distance and travel expense, and that more than 90% of the proposed retiree class resides in Indiana.

Plaintiffs respond that class inconvenience cannot support a motion to transfer because their filing of suit in this forum strongly suggests that they will not be inconvenienced by pursuing this action in this Court. Plaintiffs further contend that Defendant's corporate headquarters and principal place of business is here, and that all of its officers and directors work and live here. Plaintiffs also point out that: (1) the sponsor and administrator of the health

insurance plan is located here and the plan is administered here; (2) an Auburn Hills, Michigan address is where the company tells retirees and active employees to request copies of the plan documents; (3) Walled Lake, Michigan is the location of the company's "Retiree Benefits Service Center," which reduced retiree health insurance benefits and is the location where premiums are sent; and (4) DTP President Niekamp, who signed the letter to retirees announcing the cut, lives and works within this District.

Plaintiffs further contend that to the extent DTP is inconvenienced by producing witnesses in Detroit, transfer to Indiana would simply shift the inconvenience to Plaintiffs. Plaintiffs note that the size and resources of the parties should also be considered, and that Plaintiffs are individual retirees while Defendant is a multinational corporation.

Defendant DTP counters that the current and former Local 287 representatives, who negoatiated and signed the contracts, are, along with DTP's current and former bargaining representatives, the critical witnesses. DTP further states that the International UAW has had a limited role in collective bargaining in Muncie, and that it has been bargaining principally through local representatives in Muncie and Indianapolis, not representatives from Michigan. DTP only acknowledges one important Plaintiffs' witness in Michigan, whom DTP states has admitted that she rarely attended bargaining.

DTP also disputes that the location where the insurance plans are administered is relevant to this analysis. Although DTP admits that such facts may provide a basis for venue under ERISA, DTP contends that the location of the office administration has no bearing on any issue in this lawsuit, and that the affidavits provided by Plaintiffs are rife with inaccuracies concerning the role played in the bargaining by the respective employees.

8

When analyzing party convenience, a plaintiff's choice of forum will be given substantial deference. *Audi AG & Volkswagen of America, Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1023 (E.D. Mich. 2002) (citing *Grand Kensington LLC v. Burger King Corp.,* 81 F. Supp. 2d 834, 836 (E.D. Mich. 2000)). However, a plaintiff's chosen forum is not sacrosanct, and will not defeat a well-founded motion for change of venue. *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001) (citing *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 399 (E.D. Mich. 1994)).

Here, the lead Plaintiff in the proposed class, Willard Sloan, is a resident of Ludington, Michigan. However, he is the only named plaintiff with any connection to Michigan, and that connection is to the Western District of Michigan rather than this District. Yet, DTP's headquarters and top decisionmakers are located in this District, although the UAW representatives and other parties to the collective bargaining agreement are located in Indiana. Therefore, Plaintiffs' choice of forum is not entitled to great deference.

However, taking into consideration all of the above arguments, the Court finds that convenience of the parties favors neither party. None of the named Plaintiffs reside in Indiana or within the Eastern District of Michigan, so Plaintiffs' location favors neither forum. On the other hand, the Court notes that not even one member of Plaintiffs' proposed class resides in this District; the great majority reside in Indiana. Plaintiffs have chosen to file suit in Michigan, which strongly supports that they will not be inconvenienced by having the action remain in this Court.

Defendant DTP does not dispute that its officers and decisionmakers are located within the Eastern District of Michigan. Rather, DTP disputes whether these particular decisionmakers

9

are necessary to these proceedings. Several potential party-witnesses listed by DTP are located in Indiana, as indicated in Exhibit 3 of DTP's motion. However, it is unclear whether Plaintiffs' potential witnesses or DTP's potential witnesses are the parties who are essential to this litigation.

Because there are parties in both districts, the Court holds that the convenience of the parties factor does not strongly favor either party.

### b. Convenience of the Witnesses

Convenience of the witnesses is one of the most important factors in determining whether to grant a motion to change venue under § 1404(a). *Thomas*, 131 F. Supp. 2d at 937 (citing *Hunt v. TACA Int'l Airlines, S.A.*, No. 93-3723, 1994 WL 285023, at *2 (E.D. La. June 22, 1994) (unpublished)). Federal courts have considered convenience of the witnesses to be "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C. § 1404(a)." *McNic Oil & Gas Co. v. Ibex Resources Co.*, 23 F. Supp. 2d 729, 739 (E.D. Mich. 1998) (quoting 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d §* 3851 (2d ed. 1986)). In weighing the convenience of the witnesses, residence of the key witnesses is more important than the raw number of witnesses living in a particular jurisdiction. *Id.* (citing *SMI-Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 113 F. Supp. 2d 1101, 1105 (S.D. Tex. 2000)). Likewise, "in determining whether witness inconvenience warrants a change of venue, a court should not be persuaded merely by the number of prospective witnesses residing in a particular location, but rather by the materiality of their anticipated testimony." *Raymond Danto, Associates, Inc. v. Arthur Little, Inc,* 316 F. Supp. 1350, 1357 (E.D. Mich 1970).

"To substantiate a claim of inconvenience to witnesses, a party should provide each witness's name and a summary of the anticipated testimony to enable the court to assess the significance of the testimony." *Steelcase, Inc. v. Mar-Mol Co.*, 210 F. Supp. 2d 920, 940 (W.D. Mich. 2002). One chief witness's convenience, in fact, may outweigh the convenience of additional, less significant witnesses. *McNic Oil*, 23 F. Supp. 2d at 739. "[C]onvenience of witnesses who are also employees is considered as part of a motion to transfer and is not discounted." *Verve, L.L.C. v. Becton Dickinson & Co.*, No. 01-CV-74134, 2002 U.S. Dist. LEXIS 6483, at *7-*8 (E.D. Mich. Mar. 29, 2002) (unpublished) (citing *Thomas*, 131 F. Supp. 2d at 938-39).

DTP's list of anticipated witnesses, provided in Exhibit 3 of its motion, lists the names and testimonies of the witness' DTP intends to call at trial. Only one of these 44 witnesses, Tony Behrman, former DTP Director of Human Resources, resides in the Eastern District of Michigan. However, Plaintiffs submitted the affidavits of numerous potential witnesses, including those who may have taken part in the collective bargaining process, and several unnamed plaintiffs, who reside in Indiana and state that they will not be inconvenienced by traveling to Michigan to testify in this matter. Thus, the Court finds that this factor does not strongly favor Defendant DTP.

### c. Locus of Operative Facts

The Court holds that this factor strongly favors transfer to the Southern District of Indiana. Although neither party specifically briefed this issue, the place where the events that are the subject of this lawsuit occurred is important to this analysis. Plaintiffs do not dispute that most of the facts concerning this case took place in Indiana, not Michigan. DTP negotiated

collective bargaining agreements ("CBA's") with Local No. 287 ("the Union"), in 1989, 1995, 1998, 2000, and 2005, which took place in Indiana.  DTP also negotiated with the Union over health care benefits provided to both DTP's active hourly workers and its retirees, which also took place in Muncie, Indiana.  In addition, all of the retirees affected by the impending health care changes were employed at the Muncie plant.

Considering the facts as stated above, the locus of the operative facts favors transfer to the Southern District of Indiana.

### d.     Access to Sources of Proof

A "fundamental principle" guiding the Court's analysis is that litigation should proceed "in that place where the case finds its 'center of gravity.'" *Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 609 (E.D. La. 2000) (citation omitted).  While "the location of physical evidence such as the wreckage of a crashed plane ought to be given more weight in the balancing analysis under § 1404(a)," "the location of documentary evidence is a minor consideration."  *Cinemark*, 66 F. Supp. 2d at 890 (quoting *Picker Intern., Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 574 (N.D. Ohio 1998)).

Defendant DTP argues that the sources of proof are located in Muncie, Indiana.  These proofs include the testimony of individuals involved in the labor negotiations, the production of the collective bargaining and health insurance agreements, and possibly negotiation records and other records and testimony at the plant level between Local 287, the employees/retirees and DTP.  DTP contends that the bargaining that led to the collective bargaining agreement occurred in Muncie, Indiana.

Plaintiffs counter that while this case involves documentary evidence, the location of

documentary evidence is a minor consideration. Plaintiffs state that all of the relevant collective bargaining and health insurance agreements involved here, which belong to the UAW International Union, are maintained in its headquarters in Detroit, and that relevant documents from the local union in Muncie have already been shipped to counsel in Southfield, Michigan. Plaintiffs further note that the Retiree Benefits Service Center is also located within this District. Any remaining documents, argues Plaintiffs, can easily be copied and shipped.

The Court finds that this factor weighs against transferring the case. Most sources of proof, not pertaining to witness testimony, which was discussed above, are located in the Eastern District or can be easily sent here.

### e. Availability of Process to Compel Unwilling Witnesses

Defendant states that almost every witness in this case resides outside of the 100-mile subpoena limit of this Court, and that unless the witnesses are willing to incur the burden of traveling to Michigan, nether Plaintiffs nor DTP will be able to compel their attendance at trial. Defendant also points out that over 90% of the proposed plaintiffs class and a majority of both parties' witnesses reside in Indiana.

Plaintiffs argue that Defendant DTP has not identified any unwilling witnesses, and that virtually every one of the non-management witnesses identified by Defendant has indicated a willingness to voluntarily attend proceedings here. Plaintiffs further argue that most of the key witnesses are located in this District, and that of the former management employees identified by Defendant as anticipated witnesses, five are located outside of Indiana and the subpoena power of the Southern District of Indiana. Plaintiffs state that two key witnesses reside in Illinois and Wisconsin.

After considering the arguments of both parties, the Court holds that this factor does not strongly favor transfer because Plaintiffs have rebutted DTP's argument that most of the witnesses would be unwilling to travel to this District.

### e. Cost of Obtaining Willing Witnesses

Defendant DTP argues that because the locus of the dispute is in Indiana and the majority of the witnesses reside in the Southern District of Indiana, it will cost both Plaintiffs and DTP substantially more money to obtain willing witnesses to travel to court in Michigan.

In contrast, Plaintiffs argue that most of the key witnesses are located in this District or outside of the Southern District of Indiana.  Plaintiffs state that DTP has not produced any evidence establishing that it will incur greater witness-related costs if the case remains in Detroit, and it cannot complain about any witness-related costs which Plaintiffs may incur.  Plaintiffs contend that any such costs can be minimized by deposing witnesses where they are located.

Despite their arguments, Plaintiffs cannot deny that the cost of bringing all witnesses that DTP intends to call at trial to Michigan will be significantly higher than if this case were pursued in Indiana.  Thus, the Court holds that this factor favors transfer to the Southern District of Indiana.

### f. Interests of Justice

Defendant argues that the interests of justice favor transfer, citing this Court's prior opinion in *Watson v. Bortz Health Care of Rose City*, Case No. 05-72989, 2006 U.S. Dist. LEXIS 4852, at *14-15 (E.D. Mich. Jan. 20, 2006) (unpublished), finding that the interests of justice favored transfer where (1) not one relevant event occurred within this division; (2) the only contact that plaintiff had with this forum was his choice of counsel; and (3) defendant's

only contact was that its corporate headquarters was located in this division.

However, this case differs from *Watson* because the source of the alleged harm was not Plaintiffs immediate supervisors, but rather those individuals who worked in DTP's headquarters located in this District. As Plaintiffs point out, this District is where the plan at issue is administered and where the plan administrator is located. Plaintiffs also note that ERISA's venue provisions provide that venue is proper where the plan is administered. DTP denies that the venue provisions of ERISA are relevant to a request to transfer venue; DTP does not argue that venue is improper, but rather that the case would be more properly litigated in Indiana.

The Court finds that the interests of justice favor transfer of this case to the Souethern District of Indiana. Plaintiffs claim that DTP breached the collective bargaining agreement by unilaterally terminating the retiree benefits. Each side disputes the location of the relevant parties. Plaintiffs argue that DTP's officers and other administrative personnel, located primarily in Michigan, who made the decision are involved in this claim, while Defendant argues that the relevant entities are those individuals, located primarily in Indiana, who took part in the formation of the collective bargaining agreement at the time it was entered into by the parties. However, the parties cannot dispute that a virtually identical claim is already pending in the Southern District of Indiana, which has already ruled on a dispositive motion in the case. Accordingly, the Court finds that the interests of justice favor transferring this case to that district.

        **g.**    **Public Interest Factors**

Defendant DTP argues that the public interest factors, such as "court docket congestion; burden on the community if no connection with the case; local interest in having localized

controversies decided at home; and the court's familiarity with governing law," *Penwest*, 668 F. Supp. at 439, should also be considered in the motion to transfer.  DTP cites statistics showing that this District has a much higher average case load than does the Southern District of Indiana.  DTP also argues that it is unfair to burden jurors in this District with trying a cause of action that occurred in Muncie, Indiana, and that local interest in the dispute, as evidenced by the press' coverage of the picketing, strongly favors transfer to Indiana.  DTP notes that the Seventh Circuit law differs from Sixth Circuit law with respect to the vesting of retiree health benefits, and that the parties negotiated the collective bargaining agreement and health insurance agreement with the understanding that Seventh Circuit law would apply.

     Plaintiffs counter that although its production facility and most retirees are located in Indiana, this District is where the location of the corporate headquarters, and DTP is a major contributor to the economy and community of Southeastern Michigan.  Plaintiffs state that DTP also administers a host of other plans for its many other subsidiaries from its Auburn Hills location.   In addition, the Muncie Retiree Service Center is located here, and the outcome of this case could ultimately affect the many other health insurance plans which the company operates.  Plaintiffs state that, at worst, this factor is neutral because the local community has just as much interest in the outcome of this case as does Indiana.  Plaintiffs contend that the Eastern District of Michigan is quite familiar with the law of collectively bargained vested retiree health care benefits.  Citing the statistics and cases supplied by Defendant, Plaintiffs further contend that docket congestion does not favor transfer because the median time from filing to disposition and from filing to trial is significantly shorter in this District than in the Southern District of Indiana.

The Court finds that the public interest weighs in favor of transferring this case to the Southern District of Indiana.  The local community's interest in this case likely only increased from the media attention given to the employee and retiree picketing that occurred shortly after DTP's announcement.  The Court accords weight to the fact that 90% of the proposed Plaintiffs class resides in Indiana, and would be able to follow the proceedings much more closely if this case were litigated there rather than in this District.  Plaintiffs' bare assertion that the local community in this District would have as much of an interest in this case as does Indiana is not supported by any of the evidence presented by the parties.  Thus, the Court holds that the public interest factors support transfer to the Southern District of Indiana.

**CONCLUSION**

This is the unusual case where the attorneys on both sides must have had a hard time presenting factual arguments which were 180 degrees different from their usual arguments.  Usually, corporate defendants want to be heard in a court as far away as possible from the locale where the affected employees reside.  Similarly, employee plaintiffs usually want to be heard where the greatest number reside, to fill the courtroom with affected local citizens.  Not here.  It appears that the arguments before this Court masks the parties' desires to have the case heard where they believe a more friendly court of appeals sits – not a factor to be considered in deciding the issue of venue.

After balancing all of the above relevant factors, the Court hereby GRANTS Defendant's Motion to Transfer.

**IT IS ORDERED** that this case is transferred to the Southern District of Indiana.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: June 9, 2006

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 9, 2006.

s/Jonie Parker
Case Manager
